FILED

2004 JAN -7 P 12: 50

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BURTON HUTCHINGS | : |
| Plaintiff, | : CIVIL ACTION NO. |
| | : 3:01 - CV - 0540 (CFD) |
| vs. | : |
| UNITED STATES OF AMERICA, | : JANUARY 5, 2003 |
| Defendant. | : |

## PLAINTIFF'S AMENDED LOCAL RULE 56(a)(2) STATEMENT

Pursuant to Local Rule 56 (a)2 of this District Court, the Plaintiff, Burton Hutchings, respectfully submits this amended statement in response to the Defendant United States of America's Motion for Summary Judgment and Amended Local Rule 56 (a)(1) Statement. Several of the factual assertions contained in the Defendant's statement are either inaccurate, incomplete, or are entirely controverted, resulting in the existence of genuine issues of material fact which preclude summary judgment. Further, given the nature of this proceeding, which sounds in medical malpractice, highly complex issues relating to the professional standard of care, breach and causation also exist which can only be resolved by testimony from qualified medical experts.

**B.  Plaintiff's Response to Defendants Amended Local Rule 56 (a)(1) Statement**

1.  Plaintiff's expert, Arthur A. Serpick, M.D., bases his expert opinion on a complete review of the medical records and other medical evidence pertaining to Mr. Hutchings treatment by Defendant, the Veteran's Administration ("VA"), in Connecticut

between the years 1998 and 2000. He also bases his opinion on his education, training and experience in the diagnosis and treatment of cancer, including prostate cancer. The underlying medical records speak for themselves. Dr. Serpick does base his opinion, in part, upon the entries in the medical records and observes in his report: "In February, 1998, [the Plaintiff] did have a rectal examination that described no masses. Prostate was within normal limits. <u>No PSA examination was performed</u>." See Dr. Serpick's Report, dated September 5, 2001, attached to as Exhibit A (emphasis added). The report goes on to describe the Defendant's failure to perform a digital rectal examination and PSA on subsequent occasions.

    2.    Admitted, based upon Dr. Serpick's review of the medical records.

    3.    Admitted, based upon Dr. Serpick's review of the medical records.

    4.    Admitted in part. Specifically, Dr. Serpick opines: "Had an <u>examination been performed a year earlier</u>, I feel that there would most likely have been a T1 to T2 [tumor stage] prostate carcinoma with a 75% five year survival after undergoing radiation therapy or surgery." Id. Dr. Serpick also discusses the need for prostate cancer screening or testing and a full physical examination in 1998. The Defendant does not contend that the Plaintiff was ever advised of the need for any prostate examination, or prostate cancer screening or testing, during any of his office visits.

5.  Plaintiff denies. See Plaintiff's Responses to Defendant's Requests for Admissions, attached to Defendant's Local Rule 56 (a)(1) Statement as Exhibit "C" at para. 1.

6.  Plaintiff admits the allegation concerning his blood pressure but has denied that he "acknowledged that he had not taken his prescribed anti-hypertensive medication . . . . for six years." Plaintiff admits the last sentence. Id. at para. 2

7.  Admitted that a physical examination was performed by Dr. Cassar, but denies that the examination was a full physical examination. Id at para. 3.

8.  Plaintiff admits. Id. at para. 4.

9.  Plaintiff admits. Id. at para. 5.

10. Plaintiff admits. Id. at para. 6.

11. Plaintiff denies that he had unexcused absences from the substance abuse treatment program, resulting in his discharge. Id. at para. 7.

12. The Plaintiff was unable to admit or deny this request, as there is no definition for "Out patient Medical Clinic". Id. at para. 8.

13. Plaintiff admits that he returned to the VA in October, 1998 for a blood pressure check, but denies that he was "actively drinking" or that he had stopped taking his anti-hypertensive medication. Plaintiff admits the remaining allegations insofar as the medical records contain the quoted words. Id. at para. 9.

14. Plaintiff admits. Id. at para. 10.

15.  Plaintiff admits first sentence except that the caller was Plaintiff's ex-wife. The Plaintiff cannot admit or deny the remainder of this request he was not a party to the conversation between representatives of the Defendant and his ex-wife. Id. at para. 11.

16.  Plaintiff admits that he was seen by Dr. Sujata Prasad on December 1, 1998. Plaintiff cannot admit or deny the remainder of this paragraph because Plaintiff cannot interpret the doctor's handwriting and notations. Id. at para. 12.

17.  Plaintiff admits. Id. at para. 13.

18.  Plaintiff admits that he was again seen at the VA West Haven facility on or about January 3, 2000. Plaintiff denies remainder of paragraph. Id. at para. 14.

19.  Plaintiff admits except with regard to the names of the doctors, of which he is uncertain. Id. at para. 15.

20.  Plaintiff admits. Id. at para. 16.

21.  Plaintiff cannot admit or deny the first sentence because he is unable to interpret the doctor's notes. Plaintiff admits that Dr. Riddick wrote that she received a message from Dr. Prasad to have Plaintiff "call the clinic for an appointment." Id. at para. 17.

22.  Plaintiff admits. Id. at para. 18.

23.  Plaintiff admits. Id. at para. 19.

24.  Plaintiff admits. Id. at para. 20.

4

**B.     Plaintiff's Statement of Additional Facts for Consideration**

1.     It is undisputed that, in February 1998, the Plaintiff, who was almost 50 years of age, presented to the Veterans Administration Hospital in West Haven, Connecticut (hereinafter "VA") for treatment of alcohol dependency.

2.     The Plaintiffs birthday is April 25, 1948.  Accordingly, as of February 1998, the Plaintiff was in his fiftieth year of life.

3.     It is undisputed that American Cancer Society guidelines call for prostate specific antigen (PSA) "screening" and digital rectal examination (DRE) for all males over fifty years of age. See Report of Dr. Arthur Serpick, M.D. attached to Defendant's Amended Rule 56 Statement as Exhibit A.

4.     It is undisputed The VA bylaws also require that the medical staff provide clinical care at or above generally recognized professional standards of practice. See VA Bylaws at page 5, attached as Exhibit B.

5.     The VA policy guidelines require that all patients admitted to the VA must receive a complete physical. See VA policy guidelines, attached as Exhibit C.

6.     Upon admission to the hospital in February 1998, the medical staff at the VA performed a physical examination of the Plaintiff that included a review of all major bodily systems, along with blood and urine tests.  They also performed a rectal exam. The examination did not include a PSA test for prostate cancer. See Records of Treatment, dated February 9, 1998, attached as Exhibit D.

5

7.      On February 23, 1998, the Plaintiff was evaluated at the VA by Dr. Gail Vitagliano. Dr. Vitagliano noted that the Plaintiff complained of "erectile difficulties" which the Plaintiff attributed to hypertension medication. Again, no further physical examination was performed nor was a DRE or PSA even discussed with the Plaintiff. See Records of Treatment, dated February 23, 1998, attached as Exhibit E.

8.      On December 1, 1998, the Plaintiff presented to a VA outpatient facility in New London complaining, inter alia, of "impotence." Dr. Sujata Prasad noted in the Plaintiff's record that a PSA test should be performed.  There is no evidence that a PSA test was ever ordered or suggested to the Plaintiff, nor is there any evidence that the Plaintiff was even advised of the possibility that prostate disease and/or cancer could be the cause of his repeated complaints of impotence/erectile dysfunction. See Dr. Prasad's Notes of Treatment, dated December 1, 1998, attached as Exhibit F.

9.      In January, 2000, the Plaintiff presented to the VA again complaining of alcohol dependency and impotence/erectile dysfunction. The medical staff performed a physical examination that included a review of all major bodily systems, along with blood and urine tests.  The examination did not include either a rectal exam or a PSA test for prostate cancer. See Progress Notes, dated January 3, 2000, attached as Exhibit G.

10.     In February 2000, Plaintiff began treatment at the Connecticut Department of Veterans Affairs (hereinafter "Connecticut VA") facility in Rocky Hill. The medical staff

at the Connecticut VA performed both a DRE and a PSA. The staff found Plaintiff's rectal examination to be abnormal and his PSA an astonishing 20.7, which is extremely high. See Dr. Vincent Laudon's notes of treatment, May 2000, attached as Exhibit H. The Connecticut VA referred him to a surgeon in Hartford, Dr. Laudone, who performed a biopsy and eventually confirmed the diagnosis of prostate cancer.

  11. During this time, Ms. Carol Whelan, a registered nurse with the Connecticut VA, observed that "[the Plaintiff's] treatment is considerably more complicated than if his diagnosis had been made earlier." See Whelan Letter, dated March 27, 2000, attached as Exhibit I.

  12. Subsequently, Ms. Whelan reviewed the Plaintiff's medical records and further opined:

> [The Plaintiff] had a physical done in 1999 when he presented for treatment for alcoholism and was referred to primary care. Under rectal exam it was written 'not done.' This is clearly not the standard of care for a 51 year old male, He should have had at least a digital rectal exam, and I believe current VA guidelines call for a PSA and sigmoidoscopy. The failure to diagnose his cancer in a timely fashion may have resulted in his cancer being far more advanced at time of diagnosis, with a resultant decrease in the chance for a complete cure, and at the very least a far more difficult course of treatment.

This letter was co-signed by Dr. Evans Daniels. See Letter, dated April 5, 2000, attached as Exhibit J.

  13. Further, following the Plaintiff's radical prostatectomy, Dr. Laudone concluded that "Final pathology show[s] extensive prostate cancer, Gleason grade [7

7

out of 10] with 20-25 cubic centimeter estimated tumor volume. There [is] extension to both seminal vesicles and into the periprostatic tissues on the left side." In other words, the cancer was so advanced that it had spread to several other organs in the vicinity of the Plaintiff's prostate. See Dr. Laudone's Discharge Summary, dated June 8 2000, attached as Exhibit K.

14. The Defendant has admitted that, at least with respect to the Plaintiff's examination on January 3, 2000, "the issue of why a prostate examination was not performed at that particular visit is one more appropriately addressed through fact and expert testimony." See Plaintiff's Interrogatory 27, and Defendant's Response thereto, attached as Exhibit L.

15. It is undisputed that neither Dr. Hills nor Dr. Cassar performed or ordered a PSA test for the Plaintiff, nor did they consult with the Plaintiff concerning the possibility or risks of prostate disease or cancer. Similarly, neither Dr. Hills nor Dr. Cassar performed a full physical examination of the Plaintiff at this time.

16. It is undisputed that on February 23, 1998, Dr. Vitagliano examined Plaintiff, but did not perform or order a PSA test for the Plaintiff, nor did she consult with the Plaintiff concerning the possibility or risks of prostate disease or cancer, despite his complaints of erectile difficulties. Dr. Vitagliano did not perform a full physical examination of the Plaintiff at this time.

17. It is undisputed that Dr. Prasad, evaluating Plaintiff on December 1, 1998, never performed or ordered a PSA test for the Plaintiff, nor did she consult with the Plaintiff concerning the possibility or risks of prostate disease or cancer, despite his persistent complaints of "impotence" and "erectile difficulties". In fact, Dr. Prasad specifically wrote " PSA" but there was never any follow-up. Dr. Prasad did not perform a full physical examination of the Plaintiff at this time.

18. It is undisputed that, at the time of Plaintiff's admission on January 3, 2000, the physical examination performed by Dr. Boon-Yashidi (according to the records, co-signed by Dr. Hills), did not include an examination of Plaintiff's "genitalia/rectal" area.

THE PLAINTIFF

By: _____
Ralph J. Monaco, Esq.
CT-13306
Patrick J. Day, Esq.
CT-21858
Of Conway & Londregan, P.C.
38 Huntington St., P.O. Box 1351
New London, CT  06320-1351
860-447-3171 / FAX 860-444-6103
His Attorneys

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed, postage prepaid, to the following counsel of record this 5th day of January, 2004:

Attorney Lauren Nash
Office of the U.S. Attorney
Connecticut Financial Center
157 Church Street
P.O. Box 1824
New Haven, CT 06508

_____
Patrick J. Day, Esq.