# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BURTON HUTCHINGS,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil No. 3:01CV540 (CFD)** |
| | : | |
| | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | **JULY 6, 2004** |

## JOINT TRIAL MEMORANDUM

Pursuant to the Orders of this Court dated April 20, 2004 and May 26, 2004, the parties to the above-captioned action herewith respectfully submit their joint trial memorandum.

**1.    Trial Counsel.**

Counsel For Plaintiff: Ralph J. Monaco, Esq., and Patrick J. Day, Esq., Conway & Londregan, P.C. 38 Huntington Street, P.O. Box 1351, New London, CT  06320; Telephone: (860) 447-3171.

Counsel for Defendant:  Lauren M. Nash, Assistant United States Attorney, 157 Church Street, New Haven, CT 06508; Telephone (203) 821-3700; Cynthia L. Tyler, Esq., Special Assistant United States Attorney, U.S. Department of Veterans Affairs, Boston Regional Counsel, Connecticut Area Office, 555 Willard Avenue, Newington, CT  06111; Telephone (860) 594-7312.

**2.    Jurisdiction.**

The Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq. (Federal Tort Claims Act).

**3.    Jury / Non-Jury.**

Pursuant to 28 U.S.C. § 2402, this case will be tried to the Court.

**4.** **Nature of the Case.**

A. - B. Joint Statement of the Case.

This is a medical malpractice action under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. Plaintiff, Burton Hutchings, is suing the government for medical malpractice which he claims occurred in connection with his treatment rendered at the Veterans Administration Connecticut Healthcare System. Specifically, Plaintiff claims that in 1998 and 2000, on occasions when he was admitted for problems related to alcohol dependency, VA practitioners negligently failed to perform prostate examinations, failed to perform PSA testing/screening, on him and failed to properly counsel and advise him concerning the risks of prostrate of cancer or the need for PSA testing/screening. Plaintiff seeks damages for personal injury in the amount of $1 million. Defendant, United States of America, has denied all allegations of wrongdoing or negligence, and will submit evidence that the care rendered to the Plaintiff was within the applicable standard of care.

**5.** **Stipulations of Fact and Law.**

The parties stipulated to the following facts:

1.     The Plaintiff's date of birth is April 25, 1948.

2.     On February 17, 1998, after successfully completing the alcohol detoxification, the Plaintiff was transferred to a substance abuse day treatment program (SADP) at VA Connecticut. See Plaintiff's Amended Local Rule 56(a)2 Statement dated January 5, 2003 ("Plaintiff's Facts"), ¶ 8.

3.     On February 23, 1998, the Plaintiff was described as a "twice divorced, unemployed (x's 9 months), Navy veteran ('65 - '68) who has no SCD [Service Connected Disability]. He presents with a 25 year history of alcohol dependence." The plan was for the Plaintiff to participate daily in the substance abuse treatment program "for a minimum of three weeks." His treatment was to be provided by Dr. Michael Gill as his primary clinician and Dr. Christopher Gottschalk as the attending psychiatrist. See Plaintiff's Facts, ¶ 9.

- 2 -

4.      Also on February 23, 1998, the Plaintiff was evaluated by Dr. Gail Vitagliano in the VA's Outpatient Medicine Clinic.  Dr. Vitagliano noted that the Plaintiff complained of erectile difficulties during the past week that Plaintiff attributed to excessive hypertension medication.  Dr. Vitagliano adjusted the anti-hypertensive medication and instructed the Plaintiff to return to the clinic in one month.  She also noted that Plaintiff's health maintenance was to be addressed at his next visit.  See Plaintiff's Facts, ¶ 10.

5.      On October 29, 1998, Plaintiff returned to the Emergency Room and his blood pressure was 150/92.  See Plaintiff's Facts, ¶ 14.

6.      On December 1, 1998, Plaintiff presented to a VA facility in New London for medical treatment.

7.      Plaintiff was not treated at the VA in 1999, and there is no medical record evidence of Plaintiff having received any treatment at the VA in 1999. See Plaintiff's Facts, ¶ 17.

8.      On January 3, 2000, the Plaintiff again presented at the West Haven VA ER requesting alcohol rehabilitation.  See Plaintiff's Facts, ¶ 18.

9.      At the time of his January 3, 2000 admission, the Plaintiff underwent an examination, the note for which indicates "Genitalia/rectal: not tested."  The note also states that Plaintiff  was "to be referred to primary care clinic for f/u treatment of his medical problems." See Plaintiff's Facts, ¶ 19.

10.      On January 4, 2000,  the Plaintiff was again admitted to the VA Connecticut Day Hospital Substance Abuse Treatment Program.  See Plaintiff's Facts, ¶ 20.

11.      According to the medical record, the Plaintiff expressed an interest in admission to Rocky Hill Veterans Home & Hospital.  Plaintiff's primary clinician requested an extension in the VA CT Quarterway House on Medical Center grounds so the Plaintiff could continue to reside there until completing the SADP.  See Plaintiff's Facts, ¶ 22.

12.     On January 27, 2000, the Plaintiff was discharged from the substance abuse program after having been "clean and sober" since January 5, 2000.  The discharge plan was as follows: "The pt. has an appt. with his PCP, Dr. Prasad in New London, on 2/9/00 at 3:30.  He is scheduled for admittance to the VRC at Rocky Hill V.H. & H on 1/28/00." See Plaintiff's Facts, ¶ 23.

13.     In January of 2000, Plaintiff was admitted to the Rocky Hill Veterans Home and Hospital.  Shortly thereafter, Plaintiff was diagnosed with adenocarcinoma of the prostate. See Plaintiff's Facts, ¶ 24.

**6.     Plaintiff's Contentions.**

The Plaintiff contends that the evidence will demonstrate the following:

1.     On or about February 9, 1998, the Plaintiff, a veteran, presented to the Veterans' Administration Hospital in West Haven, Connecticut (hereinafter "VA Hospital") for medical treatment for his alcohol dependency problems. The VA medical staff did not perform a complete prostate examination on the Plaintiff, nor did they conduct prostate specific antigen ("PSA") testing, a digital rectal examination ("DRE") or a sigmoidoscopy.

2.     On February 23, 1998, Plaintiff was evaluated at the VA Hospital for complaints of alcohol dependency and "erectile difficulties". The VA medical staff did not perform any further physical examination on Plaintiff.

3.     Plaintiff was admitted to the hospital in February 1998, at which time the medical staff performed a physical examination of the Plaintiff that included a review of all major bodily systems, along with blood and urine tests.  The examination did not include a DRE or PSA test.

4.     On December 1, 1998, Plaintiff presented to a VA facility in New London for medical treatment due to his "impotence." Dr. Sujata Prasad noted in the Plaintiff's record that a PSA test should be performed, however, the test was never ordered nor suggested to Plaintiff, nor was Plaintiff advised of the possibility that prostate disease and/or cancer could be the cause of his repeated complaints of impotence/erectile dysfunction.

- 4 -

5.     On or about January 3, 2000, the Plaintiff again presented to the VA Hospital for alcohol dependency problems. The VA medical staff performed a physical examination of Plaintiff that did not include did not include a prostate exam, PSA testing or a DRE.

6.     In February, 2000, Plaintiff went to a treatment facility operated by the State of Connecticut, Department of Veterans' Affairs in Rocky Hill, Connecticut, at which time Plaintiff had a physical and a PSA. The DRE results were abnormal and his PSA testing revealed a level of 20.7, which is extremely high. The Connecticut VA referred him to a surgeon in Hartford, Dr. Laudone.

7.     Subsequently, in May, 2000, Dr. Laudon performed a biopsy and diagnosed Plaintiff with advanced stage prostate cancer. Plaintiff underwent a radical retropubic prostatectomy and bilateral pelvic lymph node dissection.

8.     During this time, Ms. Carol Whelan, a registered nurse with the Connecticut VA, observed that "[the Plaintiff's] treatment is considerably more complicated than if his diagnosis had been made earlier."

9.     Subsequently, Ms. Whelan reviewed the Plaintiff's medical records and further opined:

> [The Plaintiff] had a physical done in 1999 when he presented for treatment for alcoholism and was referred to primary care. Under rectal exam it was written 'not done.' This is clearly not the standard of care for a 51 year old male, He should have had at least a digital rectal exam, and I believe current VA guidelines call for a PSA and sigmoidoscopy. The failure to diagnose his cancer in a timely fashion may have resulted in his cancer being far more advanced at time of diagnosis, with a resultant decrease in the chance for a complete cure, and at the very least a far more difficult course of treatment.

This letter was co-signed by Dr. Evans Daniels.

10.     Following the Plaintiff's radical prostatectomy, Dr. Laudone concluded that "Final pathology show[s] extensive prostate cancer, Gleason grade [7 out of 10] with 20-25 cubic centimeter estimated tumor volume. There [is] extension to both seminal vesicles and into the periprostatic tissues on the left side."  In other words, the cancer was so advanced that it had spread to several other organs in the vicinity of the Plaintiff's prostate.

11.    The medical staff at the VA, its doctors, nurses and other healthcare professionals working on its behalf, deviated from the prevailing standard of care by failing to, <u>inter alia</u>, perform the necessary and customary physical evaluations, examinations and/or testing.

12.    As a proximate result of the Defendant's failure to diagnose Plaintiff's prostate cancer at an early stage, Plaintiff has sustained damages, including decrease in his survival rate, loss of chance, inability to enjoy life's activities, necessity of additional medical procedures and treatment, impairment of vocational and earning capacity, pain and suffering, and emotional and mental anguish.

13.    American Cancer Society guidelines call for prostate specific antigen (PSA) "screening" and digital rectal examination (DRE) for all males over fifty years of age.

14.    The VA bylaws require that the medical staff provide clinical care at or above generally recognized professional standards of practice.

15.    The VA policy guidelines require that all patients admitted to the VA must receive a complete physical.

**7.    Defendant's Contentions.**

Defendant contends that the evidence will show the following facts.

1.    Plaintiff's expert, Arthur A. Serpick, M.D., bases his expert opinion on his finding that the Plaintiff was seen at the VA in February of 1998 and had a rectal examination that described no masses and a prostate within normal limits.  Report of Arthur A. Serpick, M.D. dated September 5, 2001.

2.    Dr. Serpick finds that the Plaintiff did not have a subsequent digital rectal examination throughout 1999.  <u>Id.</u>

3.    Dr. Serpick finds that the Plaintiff was diagnosed with prostate cancer in 2000. <u>Id.</u>

- 6 -

4.      Dr. Serpick opines that had a digital rectal examination been performed a year before diagnosis, in 1999, Plaintiff would have had a less advanced cancer and a greater chance for cure.  Id.

5.      The Plaintiff's first treatment contact with the VA Connecticut Healthcare System was on February 9, 1998 when he presented at the West Haven campus Psychiatric Emergency Room.  At that time, Plaintiff reported a daily intake of l quart to ½ gallon of vodka for the previous 9 months.  Plaintiff's VA Medical Records, Volume 1 ("VAMR"), at pp. 53 and 66.

6.      At the time of the February 9, 1998 presentation, Plaintiff's blood pressure was 250/132 and he acknowledged that he had not taken his prescribed anti-hypertensive medication [Lopressor] for 6 years.  The Plaintiff was held in the psychiatric ER for the management for alcohol withdrawal. VAMR at pp. 49-50.

7.      As part of the February 1998 admission, a physical examination was performed by Joseph Cassar, the report for which was co-signed by Dr. Oscar Hills.   According to Dr. Cassar's physical examination, the Plaintiff had no rectal masses and his prostate was within normal limits and "heme (-)."   VAMR at p. 50.

8.      On February 17, 1998, after successfully completing the alcohol detoxification, the Plaintiff was transferred to a substance abuse day treatment program (SADP) at VA Connecticut.

9.      On February 23, 1998, the Plaintiff was described as a "twice divorced, unemployed (x's 9 months), Navy veteran ('65 - '68) who has no SCD [Service Connected Disability].  He presents with a 25 year history of alcohol dependence."  The plan was for the Plaintiff to participate daily in the substance abuse treatment program "for a minimum of three weeks."  His treatment was to be provided by Dr. Michael Gill as his primary clinician and Dr. Christopher Gottschalk as the attending psychiatrist. VAMR at p. 80.

10.     Also on February 23, 1998, the Plaintiff was evaluated by Dr. Gail Vitagliano in the Outpatient Medicine Clinic.  Dr. Vitagliano noted that the Plaintiff complained of erectile difficulties during the past week that Plaintiff attributed to excessive hypertension medication.  Dr. Vitagliano adjusted the anti-hypertensive medication and instructed the Plaintiff to return to the clinic in one month.  She also noted that Plaintiff's health maintenance was to be addressed at his next visit.  VAMR at pp. 81-82.

11.     On March 27, 1998, after what was described as a series of unexcused absences, the Plaintiff was discharged from the substance abuse program.  It was also noted that he had not responded to his therapist's attempts to re-engage him.  VAMR at pp. 105-106.

12.     There is no medical record evidence of Plaintiff having kept his appointment with Dr. Vitagliano at the Outpatient Medicine Clinic.

13.     Seven months later, on October 26, 1998, the Plaintiff returned to the VA Connecticut for a blood pressure check.  At that time, his blood pressure was 238/136 and when rechecked was 250/130.  The Plaintiff reported that he was "still actively drinking" and that he had stopped taking his anti-hypertensive medication.  He was held in the ER "to bring down BP before he goes home today" and he was instructed to "return to clinic to see pcp [Primary Care Provider] Dr. Haskell in 2 days for BP check." The note also concluded "Health maintenance – to be addressed by pcp Dr. Haskell – Pt has appt. scheduled w/Dr. Haskell on 1/5/99."  VAMR at p. 109.

14.     On 10/29/98 the Plaintiff did return to the Emergency Room and his blood pressure was 150/92. VAMR at p. 114.

15.     On October 30, 1998, the Plaintiff's wife called to report that he would be unable to keep his scheduled appointment.  She inquired as to whether he could receive care at the New London (VA) Outpatient Clinic and Dr. Rigsby "placed an electronic consult to New London clinic for primary care services…was also given phone number for VA transportation services that

would enable Mr. Hutchings to continue care here until he is established with the New London clinic." VAMR at p. 115.

16.     On December 1, 1998, the Plaintiff was seen by Dr. Sujata Prasad at the New London Community Based Outpatient Clinic (CBOC).  Dr. Prasad noted that the Plaintiff's systolic B/P was still elevated and that he was complaining of "impotence - ? [secondary] Felodipine, smoking, ETOH [alcohol] D/C [discontinue] ETOH."  Next Dr. Prasad wrote "✓ PSA" and noted an elevated cholesterol level, with a plan to "✓ lipid profile" and mildly elevated liver function tests [LFT's] secondary to 'binge drinking."  Dr. Prasad indicated a plan to repeat the LFT's "after D/C" [after pt. stops drinking.]   The doctor wrote as her last line in the note "RTC [Return to Clinic] 6 weeks."   VAMR at pp. 116-117.

17.     Plaintiff did not return to the VA in 1999, and there is no medical record evidence of Plaintiff having received any treatment at the VA in 1999.

18.     Thirteen months later, on January 3, 2000, the Plaintiff again presented at the West Haven campus ER requesting alcohol rehabilitation.  He admitted that he had just undergone a 4-day alcohol detoxification program at a non-VA facility and that he had been drinking a quart of vodka daily for 10 months.  He also acknowledged that he had been non-compliant with his hypertension treatment regimen. VAMR at p. 128.

19.     At the time of his January 3, 2000 admission, the Plaintiff had an examination performed by Dr. Vitharan Boon-Yasidhi, the report of which was co-signed by Dr. Oscar F. Hills.  The note for this examination indicates "Genitalia/rectal: not tested."  The note also states that Plaintiff  was "to be referred to primary care clinic for f/u treatment of his medical problems."  VAMR at pp. 129-130.

20.     On January 4, 2000,  the Plaintiff was again admitted to the VA Connecticut Day Hospital Substance Abuse Treatment Program.  VAMR at pp. 133-134.

21.     On January 3, 2000, the Plaintiff's treater in the substance abuse program, Lillian Riddick, advised him of his elevated cholesterol and liver function studies and encouraged him to

arrange for Medical Clinic follow-up.  Dr. Riddick wrote that she received a message from Dr. Prasad that the Plaintiff was "to call the clinic for an appointment."  VAMR at p. 149.

22.     According to the medical record, the Plaintiff expressed an interest in admission to Rocky Hill Veterans Home & Hospital.  Plaintiff's primary clinician requested an extension in the VA CT Quarterway House on Medical Center grounds so the Plaintiff could continue to reside there until completing the SADP.  VAMR at pp. 152.

23.     On January 27, 2000, the Plaintiff was discharged from the substance abuse program after having been "clean and sober" since January 5, 2000.  The discharge plan was as follows: "The pt. has an appt. with his PCP, Dr. Prasad in New London, on 2/9/00 at 3:30.  He is scheduled for admittance to the VRC at Rocky Hill V.H. & H on 1/28/00." VAMR at p. 154.

24.     In January of 2000, Plaintiff was admitted to the Rocky Hill Veterans Home and Hospital.  Shortly thereafter, Plaintiff was diagnosed with adenocarcinoma of the prostate.

25.     Neither a rectal examination nor a PSA test is a routine part of an admission to an alcohol facility.  Admissions to addiction treatment centers focus on the addiction problem.  Testimony of Richard J. Frances, M.D., F.A.C.P., F.A.P.A.

26.     Plaintiff's failure to comply with medical treatment recommendations by the VA and to attend to his medical needs demonstrated poor self care and a lack of personal responsibility for treatment follow up.  Testimony of Richard J. Frances, M.D., F.A.C.P., F.A.P.A.; testimony of Marc J. Bayer, M.D., F.A.C.E.P., A.B.M.T.

27.     The VA did not breach any standards of care in its treatment of the Plaintiff, but at all times rendered complete and appropriate care.  Testimony of Richard J. Frances, M.D., F.A.C.P., F.A.P.A.; testimony of Marc J. Bayer, M.D., F.A.C.E.P., A.B.M.T.

**8.**     **Legal Issues.**

     A.    Whether the conduct of any VA practitioner in assessing and treating the Plaintiff fell below the applicable standards of medical care in this case.

     B.    Whether, if VA treaters breached the standard of care, such breach(es) resulted in harm to the Plaintiff.

     C.    Whether the Plaintiff is entitled to any damage award, and if so, in what amount.

**9.**     **Voir Dire Questions.** As this case will be tried to the Court, this section is not applicable.

**10.**     **List of Witnesses.**

     A.    <u>Plaintiffs' Witness List</u>

        1.    Burton Hutchings

        2.    Kathy Long

        3.    Members of Plaintiff's family and his friends

        4.    Dr. Joseph R. Cassar, M.D.

        5.    Dr. Oscar F. Hills, M.D.

        6.    Dr. Sujata Prasad, M.D.

        7.    Dr. Boon-Yashidi, M.D.

        8.    Representatives of the United States of America, Veterans Administration Hospital Staff

        9.    Custodian of Medical Records, United States of America, Veteran's Administration.

        10.    Carol Whelan, R.N.

        11.    Dr. Evans Daniels, M.D.

        12.    Dr. Vincent Laudone, M.D.

        13.    Dr. Arthur A. Serpick, M.D.

        14.    Custodian of Medical Records, Hartford Hospital.

15.    Custodian of Medical Records, Hartford Surgical Group.

16.    Representatives of the State of Connecticut, Department of Veterans' Affairs.

17.    Custodian of Medical Records, State of Connecticut, Department of Veterans' Affairs.

18.    Dr. Franklin P. Friedman, M.D.

19.    Custodian of Medical Records, William Backus Hospital.

20.    Custodian of Medical Records, Arbour Hospital, Jamaica Plains/Boston.

Plaintiff's Expert Witness: Dr. Arthur A. Serpick, M.D.

Dr. Serpick will testify consistent with Plaintiff's expert witness disclosure. In summary, Plaintiff anticipates Dr. Serpick will testify that the VA Hospital medical staff deviated from the prevailing standard of care, including failing to follow recognized AMA guidelines and its own policies relating to physical examinations. At the time of Plaintiff's diagnosis, Plaintiff had a 45-50% survival rate over an 8-year period. If he were properly examined earlier, Defendant would have discovered the cancer and Plaintiff would have had a 75% survival rate over a 5-year period. The deviation from the prevailing standard of care resulted in the Plaintiff's cancer being far more advanced at the time of his diagnosis, with a resultant decrease in the chance for a cure, a significant lowering of his survival rate, and the need for additional, invasive medical tests, procedures and treatment.

B.    Defendant's Witness List:

1.    Oscar F. Hills, M.D.
      c/o VA Connecticut Healthcare System
      950 Campbell Avenue
      West Haven, CT 06516

Dr. Hills will testify about the care which he rendered to the Plaintiff at the WHVA beginning in 1998, as well as his knowledge of VA practices and policies at that time.

- 12 -

2.      Gail Vitagliano, M.D.
        c/o VA Connecticut Healthcare System
        950 Campbell Avenue
        West Haven, CT 06516

Dr.  Vitigliano will testify about the care which she rendered to the

Plaintiff at the WHVA beginning in 1998, as well as her

knowledge of VA practices and policies at that time.

3.      Sujata Prasad, M.D.
        c/o VA Connecticut Healthcare System
        950 Campbell Avenue
        West Haven, CT 06516

Dr. Prasad will testify about the care which she rendered to the

Plaintiff at the WHVA beginning in 1998, as well as her

knowledge of VA practices and policies at that time.

4.      Vitharan Boon-Yasidhi, M.D.
        c/o VA Connecticut Healthcare System
        950 Campbell Avenue
        West Haven, CT 06516

Dr.  Boon-Yasidhi will testify about the care which he rendered to

the Plaintiff at the WHVA in 2000, as well as his knowledge of

VA practices and policies at that time.

5.      Richard J. Frances, M.D., F.A.C.P., F.A.P.A.
        Silver Hill Hospital, Inc.
        208 Valley Road
        New Canaan, CT 06840

        Dr. Frances will testify as an expert witness for the Defendant based on his

training and experience as an addiction expert.  He will offer his professional

opinion that the care and treatment rendered to the Plaintiff by VA practitioners

was wholly within the applicable standards of care.  Specifically, he will testify

that neither a rectal examination nor a PSA test is a routine part of an admission to

an alcohol facility.  Admissions to addiction treatment centers focus on the addiction problem.   He will also testify that the Plaintiff's failure to comply with medical treatment recommendations by the VA and to attend to his medical needs demonstrated poor self care and a lack of personal responsibility for treatment follow up.  Dr. Frances will testify regarding the applicable standards of care for treatment of patients with substance abuse issues, the nature of this disease and the sequelae therefrom.

> 6.    Marc J. Bayer, M.D., FACEP, ABMT
> Vice Chairman, Department of Traumatology & Emergency Medicine
> Division of Toxiciology
> University of Connecticut Health Center
> School of Medicine
> 263 Farmington Avenue
> Farmington, CT 06030-5380

Dr. Bayer will testify as an expert witness for the Defendant based on his training and experience as an expert in emergency medicine.  He will offer his professional opinion that the care and treatment rendered to the Plaintiff by VA practitioners was wholly within the applicable standards of care.  Specifically, he will testify that the VA acted appropriately by addressing the addiction issues with which he presented.   He will also testify that the Plaintiff's failure to comply with medical treatment recommendations by the VA and to attend to his medical needs demonstrated poor self care and a lack of personal responsibility for treatment follow up. Dr. Bayer will testify regarding the applicable standards of care for emergency room treatment.

11.   **Exhibits.**

A. Plaintiffs' Exhibits

1.    Medical records relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by the VA.

- 14 -

2.    Medical records relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by the Connecticut VA.

3.    Letter from Carol Whalen, APRN, reviewed and signed by Dr. Evans Daniels, M.D., dated April 5, 2000.

4.    Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by Dr. Vincent Laudon, M.D.

5.    Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by Connecticut Surgical Group.

6.    Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff at Hartford Hospital.

7.    Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff at William Backus Hospital.

8.    Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff at Arbour Hospital.

9.    CAT scan of the abdomen and pelvis dated 9/9/02

10.   Emergency Room Department discharge instructions from Backus Hospital dated 9/9/02

11.   American Medical Association standards applicable to the evaluation, examination, diagnosis and treatment of prostate cancer.

12.   VA Hospital Healthcare System policies applicable to evaluation, examination, diagnosis and treatment of inpatients.

13.   VA Connecticut Medical Staff Bylaws applicable to evaluation, examination, diagnosis and treatment of patients.

14.   Dr. Arthur A. Serpick, M.D. report dated September 5, 2001.

15.   Plaintiff's tax records.

- 15 -

16.    Plaintiff's records of employment with Karen/B-Gone Pest Control, from April to September, 2001.

17.    Records relating to Plaintiff's service-connected disability and award of disability benefits.

18.    Defendant's answer and discovery responses.

Plaintiff reserves the right to use, refer to and/or introduce into evidence any exhibit used by Defendant at the time of trial.

B.  Defendant's Exhibits

1.    VA Medical Records, Volume I, pp.1-166  (1998-2000)

2.    VA Medical Records, Volume II, pp.167-313 (2000-2002)

3.    VA Medical Records, Volume III, pp.314-476 (2000-2002)

4.    VA Medical Records, computer progress notes (2002 - present)

5.    VA Administrative Record

6.    VA Administrative Claims File, Volume I, pp. 1-21

7.    VA Administrative Claims File, Volume II, pp. 22-59

**12.    Deposition Testimony.** None.

**13.    Requests for Jury Instructions**.  As this case will be tried to the Court, this section is not applicable.

**14.    Anticipated Evidentiary Problems.**  The parties are attempting to resolve their evidentiary objections.  In the event that a resolution cannot be reached, the parties will submit appropriate motions as soon as practicable.

**15.    Proposed Findings and Conclusions.**  Not required by the Court prior to trial.  See Trial Memorandum Order dated April 20, 2004, at p.2.

**16.    Length of Trial**.

The parties estimate that this trial will last approximately 3-4 days.

17.    **Further Proceedings.**

The parties are unaware of any further proceedings prior to trial.

18.    **Trial by Magistrate Judge.**

The parties have not consented to a trial by a Magistrate Judge.

Respectfully submitted,

PLAINTIFF, BURTON HUTCHINGS

DATE: _____    BY: _____[1]

RALPH J. MONACO, ESQ., ct13306
CONWAY & LONDREGAN, P.C.
38 HUNTINGTON STREET
P.O. BOX 1351
NEW LONDON, CT  06320
Telephone: (860) 447-3171
Facsimile: (860) 444-6103
E-mail: rmonaco.c-l@snet.net

DEFENDANT, UNITED STATES OF AMERICA

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

DATE: _____    BY: _____

LAUREN M. NASH, ct01705
ASSISTANT U.S. ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
157 CHURCH STREET, P.O. BOX 1824
NEW HAVEN, CT  06510
Telephone: (203) 821-3700
Facsimile:  (203) 773-5373
E-mail: lauren.nash@usdoj.gov

APPROVED AND SO ORDERED, dated at New Haven, Connecticut, on this  _____

day of _____, 2004.

_____
HONORABLE CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE

_____

[1]In the interest of expediting the filing of this trial memorandum, Attorney Monaco has agreed to have government counsel sign this document on his behalf.

- 17 -