UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIELLE NORDSTROM,<br>ADMINISTRATRIX OF THE<br>ESTATE OF BURTON HUTCHINGS, | :<br>:<br>: Civil No. 3:01CV540 (CFD) |
| Plaintiff, | : |
| v. | : |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : August 1, 2008 |

**DEFENDANT'S AMENDED TRIAL MEMORANDUM**

Pursuant to the Order of this Court, the Defendant, United States of America, herewith respectfully submits an amended trial memorandum on its behalf.[1]

**1.      Trial Counsel.**

Counsel for Defendant:  Lauren M. Nash, Assistant United States Attorney, 157 Church Street, New Haven, CT 06510, Telephone (203) 821-3700;  Cynthia L. Tyler, Esq., Special Assistant United States Attorney, U.S. Department of Veterans Affairs, Boston Regional Counsel, Connecticut Area Office, 555 Willard Avenue, Newington, CT  06111; Telephone (860) 594-7312.

**2.      Jurisdiction.**

The Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq. (Federal Tort Claims Act).

**3.      Jury / Non-Jury.**

Pursuant to 28 U.S.C. § 2402, this case will be tried to the Court.

---

[1]This submission is made only on behalf of the Defendant.  Undersigned counsel did offer to incorporate any changes Plaintiff's counsel wished to make to the earlier trial memorandum, but did not receive a response as of the filing of this document.

**4.     Nature of Case.**

<u>Defendant's Statement of the Case:</u>

This is an action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*. Plaintiff, Danielle Nordstrom, Administratrix of the Estate of Burton Hutchings, is suing the government for medical malpractice which is claimed to have occurred in connection with the decedent's treatment rendered at the Veterans Administration Connecticut Healthcare System. Specifically, Plaintiff claims that in 1998 and 2000, on occasions when the decedent was admitted for problems related to alcohol dependency, VA practitioners negligently failed to perform prostate examinations on him. Plaintiff seeks damages in the amount of $1 million. Defendant, United States of America, has denied all allegations of wrongdoing or negligence, and will submit evidence that the care rendered to the Plaintiff's decedent was within the applicable standard of care.

**5.     Stipulations of Fact and Law.**

The Defendant proposes the following facts as undisputed:

1.     The Plaintiff's decedent was born on April 25, 1948.

2.     On February 17, 1998, after successfully completing the alcohol detoxification, the Plaintiff's decedent was transferred to a substance abuse day treatment program (SADP) at VA Connecticut.

3.     On December 1, 1998, Plaintiff's decedent presented to a VA facility in New London for medical treatment.

4.     Plaintiff's decedent was not treated at the VA in 1999, and there is no medical record evidence of Plaintiff's decedent having received any treatment at the VA in 1999.

5.     On January 3, 2000, the Plaintiff's decedent again presented at the West Haven VA ER requesting alcohol rehabilitation.

6.     At the time of his January 3, 2000 admission, the Plaintiff's decedent underwent an examination, the note for which indicates "Genitalia/rectal: not tested." The note also states

that Plaintiff's decedent was "to be referred to primary care clinic for f/u treatment of his medical problems."

7. On January 4, 2000, the Plaintiff's decedent was again admitted to the VA Connecticut Day Hospital Substance Abuse Treatment Program.

8. On January 27, 2000, the Plaintiff's decedent was discharged from the substance abuse program after having been "clean and sober" since January 5, 2000. The discharge plan was as follows: "The pt. has an appt. with his PCP, Dr. Prasad in New London, on 2/9/00 at 3:30. He is scheduled for admittance to the VRC at Rocky Hill V.H. & H on 1/28/00."

9. In January of 2000, Plaintiff's decedent was admitted to the Rocky Hill Veterans Home and Hospital. Shortly thereafter, Plaintiff's decedent was diagnosed with adenocarcinoma of the prostate.

10. Prior to the commencement of this action, Plaintiff's decedent filed an administrative tort claim in the amount of $ 1 million, which was denied by the Department of Veterans Affairs.

11. Plaintiff's decedent died on October 22, 2006.

**7.    Defendant's Contentions.**

Defendant contends that the evidence will show the following facts.

1. The Plaintiff's decedent's first treatment contact with the VA Connecticut Healthcare System was on February 9, 1998 when he presented at the West Haven campus Psychiatric Emergency Room. At that time, Plaintiff's decedent reported a daily intake of l quart to ½ gallon of vodka for the previous 9 months. Plaintiff's decedent's VA Medical Records, Volume 1 ("VAMR"), at pp. 53 and 66.

2. At the time of the February 9, 1998 presentation, Plaintiff's decedent's blood pressure was 250/132 and he acknowledged that he had not taken his prescribed anti-hypertensive medication [Lopressor] for 6 years. The Plaintiff's decedent was held in the psychiatric ER for the management for alcohol withdrawal. VAMR at pp. 49-50.

3.  As part of the February 1998 admission, a physical examination was performed by Joseph Cassar, the report for which was co-signed by Dr. Oscar Hills. According to Dr. Cassar's physical examination, the Plaintiff's decedent had no rectal masses and his prostate was within normal limits and "heme (-)." VAMR at p. 50.

4.  On February 17, 1998, after successfully completing the alcohol detoxification, the Plaintiff's decedent was transferred to a substance abuse day treatment program (SADP) at VA Connecticut.

5.  On February 23, 1998, the Plaintiff's decedent was described as a "twice divorced, unemployed (x's 9 months), Navy veteran ('65 - '68) who has no SCD [Service Connected Disability]. He presents with a 25 year history of alcohol dependence." The plan was for the Plaintiff's decedent to participate daily in the substance abuse treatment program "for a minimum of three weeks." His treatment was to be provided by Dr. Michael Gill as his primary clinician and Dr. Christopher Gottschalk as the attending psychiatrist. VAMR at p. 80.

6.  Also on February 23, 1998, the Plaintiff's decedent was evaluated by Dr. Gail Vitagliano in the Outpatient Medicine Clinic. Dr. Vitagliano noted that the Plaintiff's decedent complained of erectile difficulties during the past week that Plaintiff's decedent attributed to excessive hypertension medication. Dr. Vitagliano adjusted the anti-hypertensive medication and instructed the Plaintiff's decedent to return to the clinic in one month. She also noted that Plaintiff's decedent's health maintenance was to be addressed at his next visit. VAMR at pp. 81-82.

7.  On March 27, 1998, after what was described as a series of unexcused absences, the Plaintiff's decedent was discharged from the substance abuse program. It was also noted that he had not responded to his therapist's attempts to re-engage him. VAMR at pp. 105-106.

8.  There is no medical record evidence of Plaintiff's decedent having kept his appointment with Dr. Vitagliano at the Outpatient Medicine Clinic.

9.  Seven months later, on October 26, 1998, the Plaintiff's decedent returned to the VA Connecticut for a blood pressure check.  At that time, his blood pressure was 238/136 and when rechecked was 250/130.  The Plaintiff's decedent reported that he was "still actively drinking" and that he had stopped taking his anti-hypertensive medication.  He was held in the ER "to bring down BP before he goes home today" and he was instructed to "return to clinic to see pcp [Primary Care Provider] Dr. Haskell in 2 days for BP check." The note also concluded "Health maintenance – to be addressed by pcp Dr. Haskell – Pt has appt. scheduled w/Dr. Haskell on 1/5/99."  VAMR at p. 109.

10.  On October 29, 1998, the Plaintiff's decedent did return to the Emergency Room and his blood pressure was 150/92. VAMR at p. 114.

11.  On October 30, 1998, the Plaintiff's decedent's wife called to report that he would be unable to keep his scheduled appointment.  She inquired as to whether he could receive care at the New London (VA) Outpatient Clinic and Dr. Rigsby "placed an electronic consult to New London clinic for primary care services…was also given phone number for VA transportation services that would enable Mr. Hutchings to continue care here until he is established with the New London clinic." VAMR at p. 115.

12.  On December 1, 1998, the Plaintiff's decedent was seen by Dr. Sujata Prasad at the New London Community Based Outpatient Clinic (CBOC).  Dr. Prasad noted that the Plaintiff's decedent's systolic B/P was still elevated and that he was complaining of "impotence - ? [secondary] Felodipine, smoking, ETOH [alcohol] D/C [discontinue] ETOH."  Next Dr. Prasad wrote "✓ PSA" and noted an elevated cholesterol level, with a plan to "✓ lipid profile" and mildly elevated liver function tests [LFT's] secondary to 'binge drinking." Dr. Prasad indicated a plan to repeat the LFT's "after D/C" [after pt. stops drinking.]   The doctor wrote as her last line in the note "RTC [Return to Clinic] 6 weeks."   VAMR at pp. 116-117.

13. Plaintiff's decedent did not return to the VA in 1999, and there is no medical record evidence of Plaintiff's decedent having received any treatment at the VA in 1999.

14. Thirteen months later, on January 3, 2000, the Plaintiff's decedent again presented at the West Haven campus ER requesting alcohol rehabilitation. He admitted that he had just undergone a 4-day alcohol detoxification program at a non-VA facility and that he had been drinking a quart of vodka daily for 10 months. He also acknowledged that he had been non-compliant with his hypertension treatment regimen. VAMR at p. 128.

15. At the time of his January 3, 2000 admission, the Plaintiff's decedent had an examination performed by Dr. Vitharan Boon-Yasidhi, the report of which was co-signed by Dr. Oscar F. Hills. The note for this examination indicates "Genitalia/rectal: not tested." The note also states that Plaintiff's decedent was "to be referred to primary care clinic for f/u treatment of his medical problems." VAMR at pp. 129-130.

16. On January 4, 2000, the Plaintiff's decedent was again admitted to the VA Connecticut Day Hospital Substance Abuse Treatment Program. VAMR at pp. 133-134.

17. On January 3, 2000, the Plaintiff's decedent's treater in the substance abuse program, Lillian Riddick, advised him of his elevated cholesterol and liver function studies and encouraged him to arrange for Medical Clinic follow-up. Dr. Riddick wrote that she received a message from Dr. Prasad that the Plaintiff's decedent was "to call the clinic for an appointment." VAMR at p. 149.

18. According to the medical record, the Plaintiff's decedent expressed an interest in admission to Rocky Hill Veterans Home & Hospital. Plaintiff's decedent's primary clinician requested an extension in the VA CT Quarterway House on Medical Center grounds so the Plaintiff's decedent could continue to reside there until completing the SADP. VAMR at pp. 152.

19. On January 27, 2000, the Plaintiff's decedent was discharged from the substance abuse program after having been "clean and sober" since January 5, 2000. The discharge plan

was as follows: "The pt. has an appt. with his PCP, Dr. Prasad in New London, on 2/9/00 at 3:30. He is scheduled for admittance to the VRC at Rocky Hill V.H. & H on 1/28/00." VAMR at p. 154.

20. In January of 2000, Plaintiff's decedent was admitted to the Rocky Hill Veterans Home and Hospital. Shortly thereafter, Plaintiff's decedent was diagnosed with adenocarcinoma of the prostate.

21. Neither a rectal examination nor a PSA test is a routine part of an admission to an alcohol facility. Admissions to addiction treatment centers focus on the addiction problem. Testimony of Richard J. Frances, M.D., F.A.C.P., F.A.P.A.

22. Plaintiff's decedent's failure to comply with medical treatment recommendations by the VA and to attend to his medical needs demonstrated poor self care and a lack of personal responsibility for treatment follow up. Testimony of Richard J. Frances, M.D., F.A.C.P., F.A.P.A.; testimony of Marc J. Bayer, M.D., F.A.C.E.P., A.B.M.T.

23. The VA did not breach any standards of care in its treatment of the Plaintiff's decedent, but at all times rendered complete and appropriate care. Testimony of Richard J. Frances, M.D., F.A.C.P., F.A.P.A.; testimony of Marc J. Bayer, M.D., F.A.C.E.P., A.B.M.T.

**8.    Legal Issues.**

Defendant's Proposed Statement of Contested Issues of Law

1. Whether the conduct of any VA practitioner in assessing and treating the Plaintiff's decedent fell below the applicable standards of medical care as alleged in this case;

2. Whether, if there was any such deviation, there is a causal connection between any such deviation and the injuries claimed in the Amended Complaint;

3. Whether the Plaintiff's decedent is entitled to any damage award, and if so, in what amount.

**9.      Voir Dire Questions.**

As this is a non-jury case, this section is inapplicable.

**10.     List of Witnesses.**

<u>Defendant's Witnesses</u>

1.      Oscar F. Hills, M.D.
        c/o VA Connecticut Healthcare System
        950 Campbell Avenue
        West Haven, CT 06516

Dr. Hills will testify about the care which he rendered to the Plaintiff's decedent at the WHVA beginning in 1998 as Chief of the Psychiatric Emergency Room, as well as his knowledge of VA practices regarding substance abuse and emergency room treatment at that time.

2.      Sujata Prasad, M.D.
        c/o VA Connecticut Healthcare System
        950 Campbell Avenue
        West Haven, CT 06516

Dr. Prasad will testify about the care which she rendered to the Plaintiff's decedent at the WHVA beginning in 1998, as well as her outpatient medical practice and standards of care at the VA Connecticut Healthcare System.

3.      Richard J. Frances, M.D., F.A.C.P., F.A.P.A.
        510 East 86th St., Apt. 1-D
        New York, NY 10028

Dr. Frances will testify as an expert witness for the Defendant based on his training and experience as an addiction expert. He will offer his professional opinion that the care and treatment rendered to the Plaintiff's decedent by VA practitioners was wholly within the applicable standards of care. Specifically, he will testify that neither a rectal examination nor a PSA test is a routine part of an admission to an alcohol facility. He will also testify that the Plaintiff's decedent's failure to comply with medical treatment recommendations by the VA and to attend to his medical needs demonstrated poor self care and a lack of

personal responsibility for treatment follow up. Dr. Frances will testify regarding the applicable standards of care for treatment of patients with substance abuse issues, the nature of this disease and the sequelae therefrom.

4. Marc J. Bayer, M.D., FACEP, ABMT
Vice Chairman, Department of Traumatology & Emergency Medicine
Division of Toxiciology
University of Connecticut Health Center
School of Medicine
263 Farmington Avenue
Farmington, CT 06030-5380

Dr. Bayer will testify as an expert witness for the Defendant based on his training and experience as an expert in emergency medicine. He will offer his professional opinion that the care and treatment rendered to the Plaintiff's decedent by VA practitioners was wholly within the applicable standards of care. Specifically, he will testify that the VA acted appropriately by addressing the addiction issues with which he presented. He will also testify that the Plaintiff's decedent's failure to comply with medical treatment recommendations by the VA and to attend to his medical needs demonstrated poor self care and a lack of personal responsibility for treatment follow up. Dr. Bayer will testify regarding the applicable standards of care for emergency room treatment.

**11.** **Exhibits.**

Defendant's Exhibits

1. VA Medical Records, Volume I, pp.1-166 (1998-2000)
2. VA Medical Records, Volume II, pp.167-313 (2000-2002)
3. VA Medical Records, Volume III, pp.314-476 (2000-2002)
4. VA Medical Records, computer progress notes (2002 - present)
5. VA Administrative Record
6. VA Administrative Claims File, Volume I, pp. 1-21
7. VA Administrative Claims File, Volume II, pp. 22-59

**12.   Deposition Testimony.**

Given that the Plaintiff's decedent, Burton Hutchings, has passed away, the Defendant intends to offer his deposition transcript in its entirety.

**13.   Requests for Jury Instructions.**

As this is a non-jury case, this section is inapplicable.

**14.   Anticipated Evidentiary Problems.**

Defendant does not anticipate any evidentiary problems.

**15.   Proposed Findings and Conclusions.**

Pursuant to this Court's Trial Memorandum Order, the parties are not required to submit proposed findings of fact or conclusions of law with their trial memorandum.

**16.   Trial Time.**

Depending on the witnesses the Plaintiff intends to call, the Defendant estimates that this trial will last approximately 3-4 days.

**17.   Further Proceedings.**

Aside from the Pretrial Conference, the Defendant is unaware of the necessity of any further proceedings prior to trial.

**18.   Election for Trial by Magistrate.**

The Defendant has not consented to have the case tried by a United States Magistrate.

    Respectfully submitted,

    DEFENDANT, UNITED STATES OF AMERICA

BY:   /s/
LAUREN M. NASH, ct01705
ASSISTANT U.S. ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
157 CHURCH STREET
NEW HAVEN, CT  06510
Telephone: (203) 821-3700
Facsimile:  (203) 773-5373
E-mail: lauren.nash@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on August 1, 2008, a copy of foregoing Defendant's Amended Trial Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

          /s/
LAUREN M. NASH, ct01705
ASSISTANT U.S. ATTORNEY
UNITED STATES ATTORNEY'S OFFICE
157 CHURCH STREET
NEW HAVEN, CT  06510
Telephone: (203) 821-3700
Facsimile: (203) 773-5373
E-mail: lauren.nash@usdoj.gov