UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIELLE NORDSTROM, | : | |
| ADMINISTRATRIX OF THE | : | |
| ESTATE OF BURTON HUTCHINGS, | : | |
| | : | |
| Plaintiff, | : | C.A. No. 3:01-CV-540 (CFD) |
| | : | |
| | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | AUGUST 19, 2008 |

### PLAINTIFF'S AMENDED TRIAL MEMORANDUM

Pursuant to the Court's recent instructions to the parties, the Plaintiff respectfully submits her amended trial memorandum.

**1.     Trial Counsel.**

Counsel For Plaintiff: Ralph J. Monaco, Esq., and Patrick J. Day, Esq., Conway & Londregan, P.C. 38 Huntington Street, P.O. Box 1351, New London, CT  06320; Telephone: (860) 447-3171.

**2.     Jurisdiction.**

The Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq. (Federal Tort Claims Act).

**3.     Jury / Non-Jury.**

Pursuant to 28 U.S.C. § 2402, this case will be tried to the Court.

**4.     Nature of the Case.**

    A.     Plaintiff's Statement of the Case

This is a medical malpractice action under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. Plaintiff, Burton Hutchings, is suing the government for medical malpractice which he claims occurred in connection with his treatment rendered at the Veterans Administration Connecticut Healthcare System.  Specifically, Plaintiff claims that in 1998 and 2000, on occasions when he was admitted for problems related to alcohol dependency, VA practitioners negligently failed to perform prostate examinations, failed to perform PSA testing/screening, and failed to properly counsel and advise him concerning the risks of prostrate of cancer or the need for PSA testing/screening.  Plaintiff seeks damages for personal injury in the amount of $1 million.  Defendant, United States of America, has denied all allegations of wrongdoing or negligence, and will submit evidence that the care rendered to the Plaintiff was within the applicable standard of care.

**5.     Stipulations of Fact and Law.**

The Plaintiff proposes that the following facts are undisputed:

1.     The Plaintiff decedent's birthday is April 25, 1948.

2.     On February 17, 1998, after successfully completing the alcohol detoxification, the Plaintiff's decedent was transferred to a substance abuse day treatment program (SADP) at VA Connecticut. See Plaintiff's Amended Local Rule 56(a)2 Statement dated January 5, 2003 ("Plaintiff's Facts"), ¶ 8.

3.     On February 23, 1998, the Plaintiff's decedent was described as a "twice divorced, unemployed (x's 9 months), Navy veteran ('65 - '68) who has no SCD [Service Connected Disability]. He presents with a 25 year history of alcohol dependence." The plan was for the Plaintiff's decedent to participate daily in the substance abuse treatment program "for a minimum

of three weeks." His treatment was to be provided by Dr. Michael Gill as his primary clinician and Dr. Christopher Gottschalk as the attending psychiatrist. See Plaintiff's Facts, ¶ 9.

3. Also on February 23, 1998, the Plaintiff's decedent was evaluated by Dr. Gail Vitagliano in the Outpatient Medicine Clinic. Dr. Vitagliano noted that the he complained of erectile difficulties during the past week that Plaintiff's decedent attributed to excessive hypertension medication. Dr. Vitagliano adjusted the anti-hypertensive medication and instructed him to return to the clinic in one month. She also noted that Hutchings' health maintenance was to be addressed at his next visit. See Plaintiff's Facts, ¶ 10.

4. On October 29, 1998, Plaintiff's decedent returned to the Emergency Room and his blood pressure was 150/92. See Plaintiff's Facts, ¶ 14.

5. On December 1, 1998, Plaintiff's decedent presented to a VA facility in New London complaining, inter alia, of "impotence."

6. Plaintiff's decedent did not return to the VA in 1999, and there is no medical record evidence of Hutchings having received any treatment at the VA in 1999. See Plaintiff's Facts, ¶ 17.

7. Thirteen months later, on January 3, 2000, the Plaintiff's decedent again presented at the West Haven campus ER requesting alcohol rehabilitation. See Plaintiff's Facts, ¶ 18.

8. At the time of his January 3, 2000 admission, the Plaintiff's decedent underwent an examination, the note for which indicates "Genitalia/rectal: not tested." The note also states that he was "to be referred to primary care clinic for f/u treatment of his medical problems." See Plaintiff's Facts, ¶ 19.

9. On January 4, 2000, the Plaintiff's decedent was again admitted to the VA Connecticut Day Hospital Substance Abuse Treatment Program. See Plaintiff's Facts, ¶ 20.

3

10. According to the medical record, Hutchings expressed an interest in admission to Rocky Hill Veterans Home & Hospital. His primary clinician requested an extension in the VA CT Quarterway House on Medical Center grounds so the Plaintiff's decedent could continue to reside there until completing the SADP. See Plaintiff's Facts, ¶ 22.

11. On January 27, 2000, the Plaintiff's decedent was discharged from the substance abuse program after having been "clean and sober" since January 5, 2000. The discharge plan was as follows: "The pt. has an appt. with his PCP, Dr. Prasad in New London, on 2/9/00 at 3:30. He is scheduled for admittance to the VRC at Rocky Hill V.H. & H on 1/28/00." See Plaintiff's Facts, ¶ 23.

12. In January of 2000, Plaintiff's decedent was admitted to the Rocky Hill Veterans Home and Hospital. Shortly thereafter, he was diagnosed with adenocarcinoma of the prostate. See Plaintiff's Facts, ¶ 24.

13. Plaintiff's decedent died on October 22, 2006.

**6. Plaintiff's Contentions.**

The Plaintiff contends that the evidence will demonstrate the following:

1. On or about February 9, 1998, the decedent, a veteran, presented to the Veterans' Administration Hospital in West Haven, Connecticut (hereinafter "VA Hospital") for alcohol dependency problems. The VA medical staff did not perform a complete prostate examination on the decedent, nor did they conduct prostate specific antigen ("PSA") testing, a digital rectal examination ("DRE") or a sigmoidoscopy.

2. On February 23, 1998, Plaintiff's decedent was evaluated at the VA Hospital for complaints of alcohol dependency and "erectile difficulties". The VA medical staff did not perform any further physical examination on Plaintiff.

4

3. Plaintiff's decedent was admitted to the hospital in February 1998, at which time the medical staff performed a physical examination that included a review of all major bodily systems, along with blood and urine tests. The examination did not include a DRE or PSA test.

4. On December 1, 1998, Plaintiff's decedent presented to a VA facility in New London complaining, inter alia, of "impotence." Dr. Sujata Prasad noted in the his medical record that a PSA test should be performed, however, the test was never ordered nor suggested to Plaintiff's decedent, nor was he advised of the possibility that prostate disease and/or cancer could be the cause of his repeated complaints of impotence/erectile dysfunction.

5. On or about January 3, 2000, the Plaintiff's decedent again presented to the VA Hospital for alcohol dependency problems. The VA medical staff performed a physical examination of Plaintiff's decedent that did not include did not include a prostate exam, PSA testing or a DRE.

6. In February, 2000, Plaintiff's decedent went to a treatment facility operated by the State of Connecticut, Department of Veterans' Affairs in Rocky Hill, Connecticut, at which time he underwent a physical and a PSA. The DRE results were abnormal and his PSA testing revealed a level of 20.7, which is extremely high. The Connecticut VA referred him to a surgeon in Hartford, Dr. Laudone.

7. Subsequently, in May, 2000, Dr. Laudone performed a biopsy and diagnosed Plaintiff's decedent with advanced stage prostate cancer. The decedent underwent a radical retropubic prostatectomy and bilateral pelvic lymph node dissection.

8. During this time, Ms. Carol Whelan, a registered nurse with the Connecticut VA, observed that "[the Plaintiff's] treatment is considerably more complicated than if his diagnosis had been made earlier."

9.	Subsequently, Ms. Whelan reviewed the Plaintiff decedent's medical records and further opined:

> [The decedent] had a physical done in 1999 when he presented for treatment for alcoholism and was referred to primary care. Under rectal exam it was written 'not done.' This is clearly not the standard of care for a 51 year old male, He should have had at least a digital rectal exam, and I believe current VA guidelines call for a PSA and sigmoidoscopy. The failure to diagnose his cancer in a timely fashion may have resulted in his cancer being far more advanced at time of diagnosis, with a resultant decrease in the chance for a complete cure, and at the very least a far more difficult course of treatment.

This letter was co-signed by Dr. Evans Daniels.

10.	Following the radical prostatectomy, Dr. Laudone concluded that "Final pathology show[s] extensive prostate cancer, Gleason grade [7 out of 10] with 20-25 cubic centimeter estimated tumor volume. There [is] extension to both seminal vesicles and into the periprostatic tissues on the left side." In other words, the cancer was so advanced that it had spread to several other organs in the vicinity of the Plaintiff decedent's prostate.

11.	The medical staff at the VA, its doctors, nurses and other healthcare professionals working on its behalf, deviated from the prevailing standard of care by failing to, <u>inter alia</u>, perform the necessary and customary physical evaluations, examinations and/or testing.

12.	The medical staff at the VA, its doctors, nurses and other healthcare professionals working on its behalf, deviated from the prevailing standard of care by failing to advise and consult with the Plaintiff's decedent concerning the possibility of prostate disease or cancer, despite his repeated complaints of "impotence" and "erectile dysfunction". Dr. Prasad did, however, recognize the Plaintiff's decedent's risk status and noted that his PSA must be checked at the examination of December 1, 1998.

13. As a proximate result of the Defendant's failure to diagnose decedent's prostate cancer at an early stage, the decedent and his estate have sustained damages, including decrease in his survival rate, loss of chance, inability to enjoy life's activities, necessity of additional medical procedures and treatment, impairment of vocational and earning capacity, pain and suffering, emotional and mental anguish, and ultimately, his premature death.

14. American Cancer Society guidelines call for prostate specific antigen (PSA) "screening" and digital rectal examination (DRE) for all males over fifty years of age.

15. The VA bylaws require that the medical staff provide clinical care at or above generally recognized professional standards of practice.

16. The VA policy guidelines require that all patients admitted to the VA must receive a complete physical.

**7.    Defendant's Contentions.**


**8.    Legal Issues.**

    A.    Whether the conduct of any VA practitioner in assessing and treating the Plaintiff's decedent fell below the applicable standards of medical care in this case.

    B.    Whether, if VA treaters breached the standard of care, such breach(es) resulted in harm to the Plaintiff's decedent.

    C.    Whether the Plaintiff and his estate are entitled to any damage award, and if so, in what amount.

**9.    Voir Dire Questions.** As this case will be tried to the Court, this section is not applicable.

**10.** **List of Witnesses.**

    A.    <u>Plaintiffs' Witness List</u>

1. Burton Hutchings, by way of deposition transcript
2. Danielle Nordstrom, Administratrix
3. Members of Plaintiff's family and his friends
4. Dr. Joseph R. Cassar, M.D.
5. Dr. Oscar F. Hills, M.D.
6. Dr. Sujata Prasad, M.D.
7. Dr. Boon-Yashidi, M.D.
8. Representatives of the United States of America, Veterans Administration Hospital Staff
9. Custodian of Medical Records, United States of America, Veteran's Administration.
10. Carol Whelan, R.N.
11. Dr. Evans Daniels, M.D.
12. Dr. Vincent Laudone, M.D.
13. Dr. Arthur A. Serpick, M.D.
14. Custodian of Medical Records, Hartford Hospital.
15. Custodian of Medical Records, Hartford Surgical Group.
16. Representatives of the State of Connecticut, Department of Veterans' Affairs.
17. Custodian of Medical Records, State of Connecticut, Department of Veterans' Affairs.

18. Dr. Franklin P. Friedman, M.D.

19. Custodian of Medical Records, William Backus Hospital.

20. Custodian of Medical Records, Arbour Hospital, Jamaica Plains/Boston.

<u>Plaintiff's Expert Witness: Dr. Arthur A. Serpick, M.D.</u>Dr. Serpick will testify consistent with Plaintiff's expert witness disclosure. In summary, Plaintiff anticipates Dr. Serpick will testify that the VA Hospital medical staff deviated from the prevailing standard of care, including failing to follow recognized AMA guidelines and its own policies relating to physical examinations. At the time of Plaintiff's diagnosis, Plaintiff had a 45-50% survival rate over an 8-year period.  If he were properly examined earlier, Defendant would have discovered the cancer and Plaintiff would have had a 75% survival rate over a 5-year period.  The deviation from the prevailing standard of care resulted in the Plaintiff's cancer being far more advanced at the time of his diagnosis, with a resultant decrease in the chance for a cure, a significant lowering of his survival rate, and the need for additional, invasive medical tests, procedures and treatment.

11.    **Exhibits.**

A. <u>Plaintiffs' Exhibits</u>

1.     Medical records relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by the VA.
2.     Medical records relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by the Connecticut VA.
3. Letter from Carol Whalen, APRN, reviewed and signed by Dr. Evans Daniels, M.D., dated April 5, 2000.
4. Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by Dr. Vincent Laudone, M.D.
5. Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff by Connecticut Surgical Group.

    6. Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff at Hartford Hospital.
    7. Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff at William Backus Hospital.
    8. Medical records and diagnostic films relating to evaluation, examination, diagnosis and/or treatment of Plaintiff at Arbour Hospital.
    9. CAT scan of the abdomen and pelvis dated 9/9/02
    10. Emergency Room Department discharge instructions from Backus Hospital dated 9/9/02
    11. American Medical Association standards applicable to the evaluation, examination, diagnosis and treatment of prostate cancer.
    12. VA Hospital Healthcare System policies applicable to evaluation, examination, diagnosis and treatment of inpatients.
    13. VA Connecticut Medical Staff Bylaws applicable to evaluation, examination, diagnosis and treatment of patients.
    14. Dr. Arthur A. Serpick, M.D. report dated September 5, 2001.
    15. Plaintiff's tax records.
    16. Plaintiff's records of employment with Karen/B-Gone Pest Control, from April to September, 2001.
    17. Records relating to Plaintiff's service-connected disability and award of disability benefits.
    16. Defendant's answer and discovery responses.

Plaintiff reserves the right to use, refer to and/or introduce into evidence any exhibit used by Defendant at the time of trial.

**12.**     **Deposition Testimony.** The Plaintiff will rely in part upon the deposition transcript of Burton Hutchings, examination dated June 16, 2005.

**13.**     **Requests for Jury Instructions**. As this case will be tried to the Court, this section is not applicable.

**14.**     **Anticipated Evidentiary Problems.** Plaintiff anticipates filing a motion in limine seeking to preclude testimony of defense experts Dr. Richard Frances and Dr. Marc Bayer on grounds that the opinions to be expressed by these individuals run afoul of F.R.E. § 702 and

Connecticut General Statutes § 52-184c in that neither is a "similar healthcare provider" as required under Connecticut law.

**15.    Proposed Findings and Conclusions.**  Not required by the Court prior to trial.  See Trial Memorandum Order dated April 20, 2004, at p.2.

**16.    Length of Trial**.

The parties estimate that this trial will last approximately 3-4 days.

**17.    Further Proceedings.**

The parties are unaware of any further proceedings prior to trial.

**18.    Trial by Magistrate Judge.**

The parties have not consented to a trial by a Magistrate Judge.

    Respectfully submitted,

    PLAINTIFF, DANIELLE NORDSTROM
    ADMINISTRATRIX OF THE ESTATE OF
    BURTON HUTCHINGS


    BY:   /s/ Patrick J. Day
    RALPH J. MONACO, ESQ. (CT-13306)
    PATRICK J. DAY (CT-21858)
    CONWAY & LONDREGAN, P.C.
    38 HUNTINGTON STREET
    P.O. BOX 1351
    NEW LONDON, CT  06320
    Telephone: (860) 447-3171
    Facsimile: (860) 444-6103
    E-mail: rmonaco.c-l@snet.net

**CERTIFICATION**

      This will certify that on August 19, 2008, a copy of the foregoing Plaintiff's Amended Trial Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                      ____/s/Patrick J. Day_____
                      Patrick J. Day (CT-21858)
                      CONWAY & LONDREGAN, P.C.
                      38 HUNTINGTON STREET
                      P.O. BOX 1351
                      NEW LONDON, CT  06320
                      Telephone: (860) 447-3171
                      Facsimile: (860) 444-6103
                      E-mail: pday.c-l@snet.net